UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------X
JDM LONG ISLAND, LLC,

                        Plaintiff,

        -against-                          <u>MEMORANDUM & ORDER</u>
                                           10-CV-5564(JS)(AKT)
U.S. BANK NATIONAL ASSOCIATION, as
successor trustee for the registered
holders of LB-UBS Commercial Mortgage
Trust 2006-C7, Commercial Mortgage
Pass-Through Certificates, Series
2006-C7,

                        Defendant.
-----------------------------------X
U.S. BANK NATIONAL ASSOCIATION, as
successor trustee for the registered
holders of LB-UBS Commercial Mortgage
Trust 2006-C7, Commercial Mortgage
Pass-Through Certificates, Series
2006-C7,

                        Counterclaim
                          Plaintiff,

        -against-

TOWN OF HEMPSTEAD INDUSTRIAL
DEVELOPMENT AGENCY; JDM LONG ISLAND,
LLC; JOSEPH MOINIAN; DAVID MOINIAN; THE
PEOPLE OF THE STATE OF NEW YORK, VILLAGE
OF HEMPSTEAD; EAST COAST PETROLEUM, INC.;
BAGNATO REALTY SERVICES, LLC (d/b/a NAI
LONG ISLAND); THE PEOPLE OF THE STATE OF
NEW YORK;"JOHN DOE;" "MARY ROE;" AND
"XYZ CORPORATION" (the last three names
being fictitious but intended to
designate tenants residing at or persons
having an interest in the premises
described in the Complaint herein,

                        Counterclaim
                          Defendants,
-------------------------------------X

APPEARANCES
For Ellis
Equities:            Christopher Clinton Costello, Esq.
                     Winston & Strawn LLP
                     200 Park Avenue
                     New York, NY 10166-4193

For the
Receiver:            Abraham B. Krieger, Esq.
                     Richard J. Eisenberg, Esq.
                     Meyer, Suozzi, English & Klein, P.C.
                     990 Stewart Avenue, Suite 300
                     P.O. Box. 9194
                     Garden City, NY 11530

For Ambrosino:       Alan M. Nelson, Esq.
                     3000 Marcus Avenue
                     Lake Success, NY 11042

SEYBERT, District Judge:

Presently before the Court are: (1) the Court-appointed Receiver's motion for approval and payment of a commission (Docket Entries 124, 155); (2) the Receiver's motion for approval and payment of attorneys' fees (Docket Entry 135); and (3) non-party Ambrosino Consultant Corporation's ("Ambrosino") motion for leave to sue the Receiver (Docket Entry 141). For the following reasons, the Receiver's motion for attorneys' fees is GRANTED IN PART and DENIED IN PART, and the Court RESERVES JUDGMENT on the Receiver's motion for a commission and Ambrosino's motion for leave to sue the Receiver pending a factual hearing.

## BACKGROUND

The Court presumes familiarity with the facts of this case, and only recites brief background facts in this section.

Additional facts relevant to the instant motions are set forth in further detail throughout the discussion section of this Memorandum and Order.

This foreclosure action involves mortgaged premises located at 175 Fulton Avenue and 20 Hilton Avenue in Hempstead, New York (the "Property"). Plaintiff JDM Long Island, LLC ("JDM"), the mortgagor, commenced this action on November 19, 2010 against Defendant U.S. Bank National Association ("U.S. Bank"), asserting claims for declaratory and injunctive relief in connection with JDM's alleged default under the mortgage. U.S. Bank removed the action to this Court on December 2, 2010 and, on February 23, 2011, U.S. Bank answered and filed a counterclaim against JDM and others seeking to foreclose on the Property.

On December 7, 2012, this Court granted partial summary judgment in U.S. Bank's favor on its foreclosure counterclaim and dismissed JDM's Complaint. (Docket Entry 100.) The remaining claims were subsequently settled and, on October 2, 2014, the Court ordered the foreclosure and sale of the Property at public auction. (Docket Entry 154.) The sale has not yet occurred but it is currently scheduled to take place next month on December 9, 2014.

On May 13, 2011, U.S. Bank filed a motion seeking the expedited appointment of a receiver to oversee the operation and

3

maintenance of the Property. (Docket Entry 38.) Before the Court could hold a hearing on the motion, JDM and U.S. Bank filed a stipulation consenting to the appointment of Dennis J. Sherry as Receiver and a proposed order detailing his duties. (Docket Entry 41.) The Court so ordered the stipulation appointing the Receiver on May 18, 2011. (Docket Entry 43.)

On October 6, 2011, the Receiver moved for the appointments of: (1) his employer, CB Richard Ellis ("CBRE"), as managing agent of the Property; (2) CBRE as leasing agent of the Property; and (3) Meyer, Suozzi, English & Klein, P.C., ("Meyer Suozzi") as counsel to the Receiver. (Docket Entry 54.) After receiving no objections from JDM, U.S. Bank, or any of the other parties, the Court granted the Receiver's motion for the appointment of a managing agent, a leasing agent, and counsel. (Docket Entry 59.)

On October 3, 2013, JDM and U.S. Bank's assignee, Ellis Equities, LLC ("Ellis"),[1] filed a stipulation and proposed order discharging the Receiver (Docket Entry 121-1), which the Court subsequently so ordered on October 4, 2013 (Docket Entry 122). Pursuant to that order, the Receivership terminated on October 15, 2013.

---

[1] U.S. Bank assigned its interests in the Property to Ellis on March 29, 2013. (See Lang Decl., Docket Entry 129, ¶ 5.)

The Receiver now moves for an order approving his accounting, fixing his commission, and granting attorneys' fees. (Docket Entries 124, 135, 155.) Ellis opposes the Receiver's motions. (Docket Entries 128, 137.) Additionally, non-party Ambrosino, a general contractor that the Receiver retained to perform certain improvements at the Property, moves for leave to sue the Receiver for breach of contract and unjust enrichment, seeking to recover payment for unpaid work. (Docket Entry 141.) These motions are currently pending before the Court.

## DISCUSSION

### I.  The Receiver's Motion for a Commission

The Receiver seeks a total commission of $454,435.69, which is five percent of $9,088,713.83, the amount that the Receiver claims the Court should use to calculate his commission. (Sherry's First Decl., Docket Entry 124, ¶ 19.) Ellis objects to the Receiver's request on several grounds. However, in order to fully understand the parties' respective positions, a brief review of the governing statute is necessary.

#### A.  N.Y. C.P.L.R. § 8004

Section 8004 of the New York Civil Practice Law and Rules governs the compensation that a court-appointed receiver may receive for services rendered during a receivership. It is comprised of two subsections, which state:

> (a)  Generally. A receiver, except where otherwise prescribed by statute, is

entitled to such commissions, not exceeding five per cent upon the sums received and disbursed by him, as the court by which he is appointed allows, but if in any case the commissions, so computed, do not amount to one hundred dollars, the court, may allow the receiver such a sum, not exceeding one hundred dollars, as shall be commensurate with the services he rendered.

(b) Allowance where funds depleted. If, at the termination of a receivership, there are no funds in the hands of the receiver, the court, upon application of the receiver, may fix the compensation of the receiver and the fees of his attorney, in accordance with the respective services rendered, and may direct the party who moved for the appointment of the receiver to pay such sums, in addition to the necessary expenditures incurred by the receiver. This subdivision shall not apply to a receiver or his attorney appointed pursuant to article twenty-three-a of the general business law.

N.Y. C.P.L.R. § 8004. Thus, under Subsection 8004(a), the receiver's commission is an amount less than or equal to, but not exceeding, five percent of the funds "received and disbursed by him," and the commission percentage is set in the discretion of the appointing court. See N.Y. C.P.L.R. § 8004(a); see also Amusement Distribs., Inc. v. Oz Forum, Inc., 113 A.D.2D 855, 855, 493 N.Y.S.2d 791, 792-93 (2d Dep't 1985) ("Where receipts have been collected by the receiver, CPLR 8004(a) . . . establishes the maximum amount that a court, in

the exercise of its discretion, can award as compensation to a receiver . . . .").

As a general rule, "commissions are only to be paid out of the funds in the receiver's hands at the termination of the receivership." Amusement Distribs., 113 A.D. 2d at 855, 493 N.Y.S.2d at 793. In other words, if expenses exceed the funds collected during the receivership, the receiver may not be entitled to a commission. This general rule is based on fairness. As one court explained, the reason for the general rule "prohibiting expenditures beyond the rent collected is that the party who moved for the receivership has no control over the receiver's expenses because the latter is an officer of the court and it would be unfair to burden the moving party with charges beyond the amounts collected." Litho Fund Equities, Inc. v. Alley Spring Apartments Corp., 94 A.D.2d 13, 16-17, 462 N.Y.S.2d 907, 909-10 (2d Dep't 1983).

However, Subsection 8004(b) of the CPLR is a codification of the exception to the general rule. It provides that even if, as in this case, there are no funds in the receiver's hands at the end of the receivership, the appointing court still may order the party who sought the receiver's appointment to pay the receiver's commission and his attorneys' fees, "in addition to the necessary expenditures incurred by the receiver." N.Y. C.P.L.R. § 8004(b). Before a court may order a

commission under Subsection 8004(b), however, the receiver must demonstrate "special circumstances" that justify a commission exceeding the funds collected. 515 E. 12th St. Assocs. v. Gentile, 160 A.D.2d 187, 188, 553 N.Y.S.2d 157, 158-59 (2d Dep't 1990) ("[S]pecial circumstances should be demonstrated before the burden of compensating the receiver, in an amount above that collected by the receiver in rents and other proceeds from the property, should be imposed."); Litho Fund Equities, 94 A.D.2d at 16, 462 N.Y.S.2d at 909 ("The real question is whether there were special circumstances that make it equitable to impose additional receivership expenses on [the plaintiff] even though the expenses exceed the rent collected.").

Additionally, "[a] receiver is not entitled to the statutory maximum [of five percent] as of right; the court has discretion to award a lower percentage." Key Bank of N.Y. v. Anton, 241 A.D.2d 482, 483, 659 N.Y.S.2d 895, 897 (2d Dep't 1997) (citations omitted). For example, New York courts have reduced commission requests where the receiver delegated his duties to others. See Resolution Trust Corp. v. Volpe, 912 F. Supp. 65, 69 (W.D.N.Y. 1996) (reducing receiver's commission to three percent because "many of the services performed by [the managing agent] effectively reduced the amount of work that [the receiver] was required to perform as receiver"); see also Indep. Props. Co. v. Mast Prop. Investors, Inc., 148 A.D.2d 849, 850,

539 N.Y.S.2d 121, 122 (3d Dep't 1989) ("If services of the receiver are performed by others, the receiver's commission should be reduced.").

With these general standards in mind, the Court turns to the Receiver's request and Ellis' objections.

B.    The Receiver's Request and Ellis' Objections

Here, the Receiver collected $6,561,115.76 in rents but made $9,593,574.31 in disbursements during the Receivership, leaving no funds at the termination of the Receivership. (See Sherry's First Decl. ¶¶ 17-19.)  Accordingly, Subsection 8004(b) applies to the Receiver's motion, and the Receiver therefore must demonstrate "special circumstances" justifying a commission before the Court may order Ellis to pay one.

According to the Receiver, of the total amount of disbursements, the Receiver paid $504,860.48 in various fees to the managing and leasing agent, CBRE, and made disbursements in the amount of $3,102,553.53 for necessary capital improvements and repairs to the Property.  (Sherry's First Decl. ¶¶ 17-18.) After deducting the $504,860.48 in fees to CBRE, the Receiver claims that the remaining $9,088,713.83 is the amount upon which his commission should be calculated.  (Sherry's First Decl. ¶ 19.)  He seeks the full five percent statutory commission on this amount, for a total commission of $454,435.69.  (Sherry's First Decl. ¶ 19.)

Ellis raises several objections to this request. It preliminarily argues that the Receiver is not entitled to any commission at all because he has not shown "special circumstances" that justify a commission under Subsection 8004(b). (Ellis' Opp. Br. to Mot. for Commission, Docket Entry 128, at 12-13.) Ellis further claims that, even if the Receiver had shown special circumstances justifying a commission, the commission he seeks is too high and should be reduced. Ellis specifically argues that: (1) the Court should not include the approximately $3.1 million expended on capital improvements in the commission calculation because the Receiver did not actually collect those funds, but rather, U.S. Bank advanced them as reimbursements for expenditures (Ellis' Opp. Br. to Mot. for Commission at 14-16); (2) the Receiver's commission should be reduced by certain fees paid to CBRE because CBRE's services were either duplicative of the Receiver's efforts or were not authorized by the Court (Ellis' Opp. Br. to Mot. for Commission at 16-17); and (3) the Receiver is not entitled to the full five percent statutory commission for a number of reasons, including that the Receiver delegated his work to CBRE and also failed to comply with the Court's order appointing him (Ellis' Opp. Br. to Mot. for Commission at 18-20).

The Court finds that this case presents special circumstances justifying a commission but that the amount upon

which such commission is calculated should not include the $3.1 million expended on necessary capital improvements. However, as explained more fully below, the Court cannot set the Receiver's final commission at this time, because the Receiver's records do not provide sufficient detail regarding all of the services performed by CBRE, whether such services were duplicative of the Receiver's efforts, or whether all of the fees paid were reasonable. Additionally, the parties' submissions present an issue of fact regarding whether the Receiver incurred unauthorized expenses (and therefore violated this Court's order appointing him) when he retained Ambrosino to perform work at the Property. These issues must be addressed at a factual hearing before the Court can render a final decision regarding the Receiver's commission.

     C.   <u>Special Circumstances</u>

As noted, Ellis preliminarily argues that the Receiver is not entitled to any commission because he has not shown "special circumstances" that justify a commission under Subsection 8004(b). (Ellis' Opp. Br. to Mot. for Commission at 12-13.) The Court disagrees. "Special circumstances exist where the receiver's application has unusual merit . . . ." <u>Amusement Distribs.</u>, 113 A.D.2d at 856, 493 N.Y.S.2d at 793. Courts have found "unusual merit" to a receiver's application where the receiver spent time and effort preserving the economic

or physical welfare of the property. See, e.g., Sun Beam
Enters. v Liza Realty Corp., 210 A.D.2d 153, 154, 621 N.Y.S.2d
9, 10 (1st Dep't 1994) (holding that the trial court did not err
in finding "special circumstances" where "the proof submitted by
the receiver established that the receivership was conducted
with the utmost concern for the physical and economic
preservation of the property and that the money expended was
judiciously spent and was necessary for its preservation"
(internal quotations marks and citation omitted)); Parker Note
Acquisition v. Parker Ave. Assocs. LLC, No. 3020/2012, 2014 WL
3700622, at *1 (N.Y. Sup. Ct. Dutchess Cnty. July 25, 2014)
(finding "unusual merit" to receiver's application where the
receiver "spent a significant amount of time and effort making
sure the building [was] secure," including "hir[ing] a
maintenance company to secure and maintain the building,
me[eting] with insurance adjusters in order to file a claim for
damage to [the] building and maintain insurance thereon, and
cooperat[ing] with [the police department] regarding several
break-ins and trespass charges on the property"); see also BRUCE
J. BERGMAN, BERGMAN ON MORTGAGE FORECLOSURES § 10.18 ("An example of
special circumstances supporting payment to the receiver by the
party which sought the appointment has been couched in terms of
the need for upkeep at dilapidated premises and the curing of
numerous violations which required extensive emergency repairs,

all of which were assessed as necessary and beneficial to the plaintiff.") (collecting cases).

Here, the Receiver's application has unusual merit in that the Receiver, despite not collecting a financial profit, still spent significant time and effort over the course of a twenty-nine month Receivership caring for and repairing the Property. It is not disputed that the Property was in serious financial and physical disarray when the Receiver took possession. At various points prior to the Receiver's appointment, JDM owed hundreds of thousands of dollars in unpaid electric, maintenance, and operational charges. The electric company threatened to shut off electric service to the building due to unpaid bills. Additionally, U.S. Bank noted in its application seeking the Receiver's appointment that a 2011 inspection of the Property revealed significant structural damage to the building, deterioration in the parking lot and other areas around the Property, and malfunctioning mechanical systems such as the elevators. The Receiver's preliminary due diligence confirmed these issues and revealed that they were so severe that the Property could become readily inhabitable if not rectified. (Sherry's First Decl. ¶¶ 11-12.)

The Receiver oversaw necessary capital improvements and repairs to the Property and rectified many other issues, including the fact that many tenants had refused to pay rent due

to the condition of the Property.  (Sherry's First Decl. Exs. E-N.)  Ellis claims that the Receiver has not shown special circumstances because the Property operated at a financial loss, but Ellis cannot seriously dispute that the Receiver made significant strides in preserving the Property.  As U.S. Bank's assignee, it may not reap the benefits of the Receiver's work without compensating him.  See East Chatham Corp. v. Iacovone, 25 A.D.2d 622, 623, 267 N.Y.S.2d 839 (1st Dep't 1966) (holding that a party substituted for the one that made the receivership application "stands in the shoes" of that party "both as to rights and obligations").

Accordingly, the Court rejects Ellis' contention that the Receiver has not demonstrated special circumstances justifying a commission.  Having found that the Receiver has demonstrated special circumstances, the Court will now turn to Ellis' remaining objections.

D.  Expenditures for Capital Improvements

The Receiver claims that his commission should be calculated on $9,088,713.83, which includes roughly $3.1 million that U.S. Bank advanced during the course of the Receivership to pay for necessary capital improvements and repairs to the Property.  (Sherry's First Decl. ¶¶ 17-18.)  Ellis argues that amounts advanced by U.S. Bank should not be included in the commission calculation because those funds constitute

reimbursements for expenses, which cannot serve as the basis for a commission. (Ellis' Opp. Br. to Mot. for Commission at 14-16.) The Court agrees with Ellis.

As noted, Subsection 8004(a) limits a receiver's commission to "five per cent upon the sums received and disbursed by him." N.Y. C.P.L.R. § 8004(a) (emphasis added). New York courts have interpreted this phrase to mean that a receiver is entitled to a commission on "the total amount which passes through the Receiver's hands." Coronet Capital Co. v. Spodek, 202 A.D.2d 20, 26, 615 N.Y.S.2d 351, 355 (1st Dep't 1994)). However, Subsection 8004(b) clearly indicates that a receiver's "expenditures" are separate and distinct from his compensation. See N.Y. C.P.L.R. § 8004(b) (stating that the court may order the party who moved for the appointment of the receiver to pay the receiver's commission "in addition to the necessary expenditures incurred by the receiver"); see also Resolution Trust, 912 F. Supp. at 67 (noting that Subsection 8004(b) "indicat[es] that 'expenses' are distinct from the receiver's compensation").

Nonetheless, the Receiver argues that since U.S. Bank advanced the funds at issue to the Receiver, the funds therefore were "received" and then "disbursed" by him within the meaning of Subsection 8004(a). (See Receiver's Reply Br. in Supp. of Mot. for Commission, Docket Entry 134, at 5-6.) The Court does

not agree. The $3.1 million spent on capital improvements and repairs constitute expenses beyond what the Receiver collected in rents. Neither the parties nor the Court's independent research has produced a single case that even suggests that amounts advanced to reimburse a receiver for necessary expenses may be included in the calculation of the receiver's commission. Instead, the cases calculate the receiver's commission based on rents and profits collected and disbursed alone. See, e.g., Hirsch v Peekskill Ranch, 100 A.D.2d 863, 474 N.Y.S.2d 117 (1st Dep't 1984); Bank of Am., N.A. v. Dix McBride, LLC, No 9607/2009, 2013 N.Y. Misc. LEXIS 4120, at *4-5 (N.Y. Sup. Ct. Queens Cnty. Sept. 11, 2013); Katz v. Glassworks LLC, No. 120329/2011, 2004 WL 583831, at *5 (N.Y. Sup. Ct. N.Y. Cnty. Mar. 15, 2004). Simply put, that U.S. Bank sent the Receiver funds to pay for expenses does not transform those funds into amounts received by the Receiver for the purpose of calculating his commission. Accordingly, the calculation of the Receiver's commission will not include the funds spent on capital improvements.[2]

---

[2] Under New York law, a receiver may be awarded additional amounts "representing the reasonable value of services rendered under the doctrine of quantum meruit if the statutory amount would be 'manifestly unfair.'" Fed. Home Loan Mortg. Corp. v. S.E.A. Yonkers Assocs., 869 F. Supp. 187, 188 (S.D.N.Y. 1994). However, the Receiver has not made a claim for compensation based on the doctrine of quantum meruit, instead relying on the statutory percentage calculation under Subsection 8004(a). Moreover, while he estimates that he has spent 2,500 hours

E.   <u>CBRE's Fees</u>

The Court will now turn to the issue of CBRE's fees and whether they should be subtracted from the Receiver's final commission.   On October 31, 2011, the Court appointed CBRE "as the managing agent for the [Property] at a fixed fee of $5,000 per month, plus a $10,000 transition fee" and "as leasing agent . . . pursuant to a separate written proposal dated July 28, 2011."   (Docket Entry 59.)   During the course of the Receivership, the Receiver directed the payment of two types of compensation to CBRE, which U.S. Bank has already paid. Specifically, CBRE received $168,332.50 in "managing agent fees" and $209,566.44 in "brokerage commissions."   (Sherry's First Decl. ¶¶ 10-11, Ex. O.)

Additionally, the Receiver and U.S. Bank's agent, CW Capital, selected a CBRE affiliate, CBRE Management, to act as "Project Manager" to oversee the "day-to-day implementation" of the various necessary capital improvements to the Property. (Sherry's First Decl. ¶ 8.)   CBRE Management charged U.S. Bank $126,961.54 in "project management fees" for this work--fees

_____

"fulfilling his duties as Receiver," (Sherry's First Reply
Decl., Docket Entry 133, ¶ 19), he does not provide any further
breakdown of his hours or indicate how many hours were spent
working on capital improvements to the property.  Thus, there is
insufficient evidence in the record for the Court to even make a
determination of the reasonable value of the services the
Receiver rendered in connection with the capital improvements
work.

that were separate from the fees paid for property management and brokerage. (Sherry's First Decl. ¶ 9.)

Ellis argues that the Receiver's final commission must be reduced by the managing agent fees and the project management fees paid to CBRE. (Ellis' Opp. Br. to Mot. for Commission at 16-18.) Ellis contends that the managing agent fees should be subtracted from the Receiver's final commission because the services performed by CBRE were duplicative of the Receiver's efforts. (Ellis' Opp. Br. to Mot. for Commission at 16-17.) With respect to the project management fees paid to CBRE Management, Ellis contends that such fees should be deducted because the Receiver's selection of CBRE Management as Project Manager constituted an unauthorized appointment. (Ellis' Opp. Br. to Mot. for Commission at 18.)

As a general rule, "[a] receiver is not entitled to reimbursement for an agent's commissions in the absence of a court order authorizing the agent's employment." Aloi v. Lizeric Realty Corp., 260 A.D.2d 192, 193, 688 N.Y.S.2d 512, 513 (1st Dep't 1999). Here, although the Court approved the Receiver's employment of CBRE as managing and leasing agent, the Receiver did not seek this Court's approval to retain CBRE Management as Project Manager to oversee the necessary capital improvements to the Property. He therefore violated the Court's order appointing him, which unequivocally stated "that the

Receiver shall not make any secondary appointments without the prior written approval of the Court, and that the Receiver shall apply to the Court in a separate application for . . . other managing services." (Docket Entry 43 at 8 (emphasis added)). Nonetheless, New York caselaw suggests that a receiver may receive his commission in addition to reimbursement for unauthorized fees to an agent if the receiver demonstrates "special circumstances" under Subsection 8004(b). See, e.g., Aloi, 260 A.D.2d at 193, 688 N.Y.S.2d at 513-14 ("[T]he failure of the receiver to obtain judicial approval to compensate the managing agent in excess of the fee limit set forth in the order does not bar the exercise of discretionary authority based upon the existence of special circumstances.").

Here, special circumstances exist in that U.S. Bank's agent consented to the retention of CBRE Management and approved and paid for the unauthorized project management fees. Additionally, there is no dispute that capital improvements were necessary and that Ellis, as U.S. Bank's assignee, benefitted from the work. Although the Court is dismayed that the Receiver did not seek judicial approval before incurring these expenses, it would be inequitable to deduct the project management fees paid to CBRE Management from the Receiver's final commission based solely on the ground that this Court did not approve the retention of CBRE Management. See id. (finding that "special

circumstances" existed based on "the work performed on the premises, the benefits plaintiff received, and the fact that . . . the previous plaintiff[ ] agreed to the hiring of the managing agent," all of which "demonstrate[d] [that] the receivership was conducted with the utmost concern for the physical and economic preservation of the property" (internal quotation marks and citations omitted)).

That said, a court may grant a full award of commissions to a receiver in addition to a full award of expenses for the employment of a managing agent <u>only</u> if the agent's fees "are justified and the services performed by the receiver and the agent were not duplicative." <u>Resolution Trust</u>, 912 F. Supp. at 67 (collecting cases). The receiver must justify his account, <u>see</u> <u>Indep. Props.</u>, 148 A.D.2d at 850, 539 N.Y.S.2d at 122, and the agent's fees must be necessary and "adequately documented," <u>Resolution Trust</u>, 912 F. Supp. at 68. If the receiver's and the agent's "services were duplicative, they are compensable only once, and if they were unnecessary, they are not compensable at all." <u>Resolution Trust</u>, 912 F. Supp. at 68.

Here, the Court cannot award a commission to the Receiver or approve all of the fees paid to CBRE without first conducting a factual hearing. The affidavits submitted by the Receiver are too sparse for the Court to ascertain precisely

what services CBRE performed, on what basis its fees were calculated, or whether the fees were reasonable, particularly with respect to the project management fees paid to CBRE Management. The Receiver's affidavit simply states that CBRE Management "was the natural choice to oversee the day-to-day implementation of the HVAC work and other construction" and alleges in a conclusory manner that the fees for such work "were necessary for the successful completion of the [capital improvements] work" and "were consistent with the cost of such services in the relevant market." (Sherry's First Reply Decl. ¶¶ 8-9.) This two-paragraph summary is insufficient to support the award of project management fees without first conducting a hearing. See Coronet Capital, 202 A.D.2d at 27, 615 N.Y.S.2d at 356 (holding that the trial court erred in awarding $145,000 in fees to the managing agent based on a "single-paragraph summary of services . . . without a hearing to determine the issues including the services performed by the managing agent, whether such services were duplicative, and the reasonable compensation for the services rendered"); see also Indep. Props., 148 A.D.2d at 850, 539 N.Y.S.2d at 122 (remanding to trial court "for the calculation of an appropriate award upon submission of affidavits by the receiver specifying in detail the nature of his services and the time spent on such activities" because it appeared that many of his duties had been delegated to an agent,

which had been paid $43,000). Similarly, the Receiver does not explain how CBRE's brokerage commissions were calculated, nor is it clear whether the managing agent fees paid to CBRE exceeded the Court's order appointing CBRE as the managing agent.

Accordingly, the Court RESERVES JUDGMENT with respect to the Receiver's motion for a commission pending a factual hearing regarding the services provided by CBRE. The Receiver should be prepared to explain in detail and submit documentation that demonstrates precisely what services CBRE performed, on what basis CBRE's fees were calculated, and whether the fees were reasonable. See Gasser v. Infanti Int'l, Inc., 358 F. Supp. 2d 176, 181 n.10 (E.D.N.Y. 2005) ("When the receiver presents his claim for compensation, he must itemize each expense for which he seeks reimbursement and demonstrate that it was necessarily incurred." (internal quotation marks and citations omitted)).

F.  The Receiver's Retention of Ambrosino

The Court also notes that it cannot finalize the Receiver's commission for the additional reason that the parties' submissions present a factual dispute regarding the Receiver's retention of Ambrosino as a general contractor to perform certain improvements at the Property. The dispute specifically arises out of a 2013 lease amendment between the Receiver and Winthrop University Hospital ("Winthrop"), a

preexisting tenant at the Property. According to the Receiver, Winthrop advised him that it wished to extend the terms of the lease and lease additional space. The Receiver and Winthrop agreed to terms in August 2012 and executed a "Second Amendment to Lease" on February 22, 2013 (the "Lease Amendment"). (See Sherry's First Reply Decl. Ex. B.) The Lease Amendment provided, among other things, that the Receiver, as landlord of the Property, would provide $254,190 for certain improvements to the leased space pursuant to a "Landlord Work Letter" accompanying the Lease Amendment. (See Sherry's First Reply Decl. Ex. B.) The Receiver subsequently retained Ambrosino as the general contractor for this work pursuant to a service contract dated July 11, 2013.

The Court subsequently discharged the Receiver and Ellis refused to pay Ambrosino for the work performed under the service contract. Ellis claims that the Lease Amendment was unauthorized because it caused the Receiver to incur expenses beyond the funds in his hands and he did not first obtain approval from the Court or written consent from U.S. Bank to do so. This Court's order appointing the Receiver specifically "prohibited [him] from incurring obligations in excess of the monies in his hands without further order of the court or written consent of the Lender." (Docket Entry 43 at 6.) The Receiver contends that U.S. Bank's agent, CW Capital, consented

to the Lease Amendment and the improvement work required under it, although he has not produced any form of written consent from U.S. Bank or CW Capital. Given the nature of the parties' submissions, the Court feels that it is appropriate to explore the circumstances surrounding the Receiver's execution of the Lease Amendment with Winthrop and the service contract with Ambrosino at the factual hearing. The Court also RESERVES JUDGMENT with respect to Ambrosino's motion for leave to sue the Receiver (Docket Entry 141) because the factual hearing may affect Ambrosino's right to relief against the Receiver.

II.  The Receiver's Request for Attorneys' Fees

The Receiver's counsel, Meyer Suozzi, seeks $46,897.44 in attorneys' fees and disbursements for the period of July 1, 2013 to March 15, 2014. (Sherry's Decl. in Supp. of Mot. for Attorneys' Fees, Docket Entry 135-2, ¶ 31.) Ellis contends that the Receiver's request includes the following four categories of legal fees that fall outside of the scope of the Receivership:

(1)  legal fees incurred in preparing the final accounting;

(2)  legal fees incurred in responding to Ellis Equities' justified opposition to the over-reaching application for the Receiver's commission;

(3)  legal fees incurred after the Receivership terminated on October 15, 2013; and

(4)  legal fees incurred because the Receiver did not fulfill his

24

> obligations under this Court's order
> appointing him, _i.e.,_ to prepare and
> file monthly reports of his activities,
> as well as a full accounting of all
> monies received and paid by the
> Receiver throughout the course of the
> Receivership.

(Ellis' Opp. Br. to Mot. for Attorneys' Fees, Docket Entry 137, at 2.) Ellis argues that any award of attorneys' fees must be reduced by the fees incurred for these activities. As discussed below, the Court disagrees with Ellis, with the exception of fees that Meyer Suozzi incurred after October 15, 2013 that were not in furtherance of the Court's order discharging the Receiver.

As noted, Ellis first argues that the Receiver is not entitled to any legal fees incurred in connection with the preparation of his final accounting or in responding to Ellis' opposition to the Receiver's request for a commission. (Ellis' Opp. Br. to Mot. for Attorney's Fees at 5-6.) The Court disagrees.

Courts in New York have consistently held that attorneys' fees may be awarded to a receiver when a "so-ordered stipulation[] expressly authorized and ratified the receiver's retention of outside counsel . . . in connection with the receivership, and where the facts . . . established that counsel's services were warranted." Sun Beam, 210 A.D.2d at 153, 621 N.Y.S.2d at 10 (citations omitted); see also Gasser,

358 F. Supp. 2d at 182 ("Where, as here, the order appointing the Receiver permits him to engage counsel, the attorney's fees must be reasonable in light of the services rendered by counsel and the amount of property held in the receivership."). Contrary to Ellis' contention, attorneys' fees may be awarded to a receiver in connection with the receiver's final accounting if the legal representation is necessary and/or would facilitate the final accounting process. See, e.g., David Realty & Funding, LLC v. Second Ave. Realty Co., 14 A.D.3d 450, 451, 788 N.Y.S.2d 371, 373 (1st Dep't 2005) (affirming award of attorneys' fees to the law firm the receiver hired to represent him in connection with his final accounting given "the parties' demonstrated animosity toward [the receiver] throughout the final accounting process" and "in light of the fact that the firm's representation of the receiver in the final accounting greatly facilitated that process"); but see Golden City Commercial Bank v. 207 Second Ave. Realty Corp., 100 A.D.3d 403, 404-05, 956 N.Y.S.2d 1, 2 (1st Dep't 2012).

Here, the Court finds that the Receiver is entitled to attorneys' fees for legal representation in connection with the final accounting. The Court ordered the Receiver to file a final accounting upon termination of the Receivership, the fees incurred were in furtherance of that order, and the fees were necessary given the duration of the Receivership and the many

objections raised by Ellis to the Receiver's final accounting. Accordingly, the Court rejects Ellis' objection to attorneys' fees incurred in connection with the final accounting.

Ellis next claims that the Receiver is not entitled to any legal fees incurred after the termination of the Receivership. (Ellis' Opp. Br. to Mot. for Attorney's Fees at 5-6.) The Court disagrees with Ellis that all of the fees incurred after the termination are not recoverable. Although more than half of the fees the Receiver's seeks were incurred after the Court's order terminating the Receivership, nearly all of these fees were for work performed in furtherance of the Court-ordered final accounting and/or in responding to questions raised by Ellis after its review of the Receiver's motion for a commission. These activities did not violate of the Court's order terminating the Receivership and attorneys' fees for such work are recoverable. See David Realty, 14 A.D.3d at 451, 788 N.Y.S.2d at 373 ("The receiver . . . did not violate the [trial court's] 'termination' order directing him to cause his attorneys and accountants to cease any further work with respect to the property in question, apart from the final accounting. . . . [because] his actions were taken in furtherance of the court-directed final accounting."). Furthermore, the Court is not convinced that the Receiver's failure to file monthly reports with the Court created the need

27

for Ellis' follow-up questions since the Receiver turned over all of his monthly reports to Ellis once it acquired its interest in the Property.[3]

However, the Court disagrees with the Receiver that he is entitled to all of his attorneys' fees incurred after the termination of the Receivership. He is not entitled to fees for activities that were not in furtherance of the Court's order discharging him, including time expended responding to inquiries from vendors and other parties regarding unpaid bills and the Property generally. Based on the Court's review of Meyer Suozzi's time records, these fees amount to $2,185 and should be deducted from the final award of attorneys' fees.

The Court has carefully examined the remaining time entries on Meyer Suozzi's invoices and is satisfied that such fees and costs are warranted and reasonable. Accordingly, the Receiver's motion for attorneys' fees and costs is GRANTED, less the $2,185 incurred for fees excluded.

<u>CONCLUSION</u>

For the foregoing reasons, the Receiver's motion for attorneys' fees (Docket Entry 135) is GRANTED IN PART and DENIED IN PART. The Receiver is entitled to $44,712.44 in attorneys' fees and costs incurred from July 1, 2013 to March 15, 2014.

---

[3] However, the Receiver's failure to file monthly reports, as required by this Court's order appointing him, may result in a reduction of his commission.

The Court RESERVES JUDGMENT on the Receiver's motion for a commission (Docket Entries 124, 155) and Ambrosino's motion for leave to sue the Receiver (Docket Entry 141) pending a factual hearing. As noted on the docket, the hearing is scheduled for Thursday, December 4, 2014, at 9:30AM in Courtroom 1030.

SO ORDERED.

/s/ JOANNA SEYBERT
Joanna Seybert, U.S.D.J.

Dated:     November   21  , 2014
           Central Islip, New York