```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------X
JDM LONG ISLAND, LLC,

                        Plaintiff,

        -against-                              MEMORANDUM & ORDER
                                               10-CV-5564(JS)(AKT)
U.S. BANK NATIONAL ASSOCIATION, as
successor trustee for the registered
holders of LB-UBS Commercial Mortgage
Trust 2006-C7, Commercial Mortgage
Pass-Through Certificates, Series
2006-C7,

                        Defendant.
----------------------------------------X
U.S. BANK NATIONAL ASSOCIATION, as
successor trustee for the registered
holders of LB-UBS Commercial Mortgage
Trust 2006-C7, Commercial Mortgage
Pass-Through Certificates, Series
2006-C7,

                Counterclaim Plaintiff,

        -against-

TOWN OF HEMPSTEAD INDUSTRIAL
DEVELOPMENT AGENCY; JDM LONG ISLAND,
LLC; JOSEPH MOINIAN; DAVID MOINIAN;
THE PEOPLE OF THE STATE OF NEW YORK,
VILLAGE OF HEMPSTEAD; EAST COAST
PETROLEUM, INC.; BAGNATO REALTY
SERVICES, LLC (d/b/a NAI LONG ISLAND);
THE PEOPLE OF THE STATE OF NEW YORK;
"JOHN DOE;" "MARY ROE;" AND "XYZ
CORPORATION" (the last three names
being fictitious but intended to
designate tenants residing at or
persons having an interest in the
premises described in the Complaint
herein,

                Counterclaim Defendants.
----------------------------------------X
```

APPEARANCES

For Ellis
Equities:            Christopher Clinton Costello, Esq.
                     Winston & Strawn LLP
                     200 Park Avenue
                     New York, NY 10166-4193

For the
Receiver:            Abraham B. Krieger, Esq.
                     Richard J. Eisenberg, Esq.
                     Meyer, Suozzi, English & Klein, P.C.
                     990 Stewart Avenue, Suite 300
                     PO Box 9194
                     Garden City, NY 11530

SEYBERT, District Judge:

Currently pending before the Court is the Court-appointed Receiver's motions for approval and payment of a commission and attorneys' fees. (Docket Entries 124, 135.) For the following reasons, the Receiver's motions are DENIED in their entirety.

BACKGROUND

This foreclosure action involves property located at 175 Fulton Avenue and 20 Hilton Avenue in Hempstead, New York (the "Property"). JDM Long Island, LLC ("JDM"), the mortgagor, originally commenced this action on November 19, 2010 against the mortgagee, U.S. Bank National Association ("U.S. Bank"), asserting claims for declaratory and injunctive relief in connection with JDM's alleged default under the mortgage. (See Notice of Removal, Docket Entry 1.) U.S. Bank removed the action to this Court on December 2, 2010 and, on February 23,

2011, U.S. Bank answered and filed a counterclaim against JDM and others seeking to foreclose on the Property. (See Docket Entry 15.)

On December 7, 2012, the Court granted partial summary judgment in U.S. Bank's favor on its foreclosure counterclaim and dismissed JDM's Complaint. (Docket Entry 100.) The remaining claims were subsequently settled and, on October 2, 2014, the Court ordered the foreclosure and sale of the Property at public auction. (Docket Entry 154.) The sale has occurred and has been confirmed and ratified by the Court. (Docket Entry 176.)

Before it filed its summary judgment motion, U.S. Bank moved for the expedited appointment of a receiver to oversee the operation and maintenance of the Property. (Docket Entry 38.) Before the Court could hold a hearing on the motion, JDM and U.S. Bank filed a stipulation consenting to the appointment of Dennis J. Sherry as Receiver and a proposed order detailing his duties. (Docket Entry 41.) The Court so ordered the stipulation and appointed the Receiver on May 18, 2011 (the "Appointment Order"). (Docket Entry 43.)

On October 6, 2011, the Receiver moved for the additional appointments of: (1) his then-employer, CB Richard Ellis ("CBRE"), as "managing agent" of the Property; (2) CBRE as "leasing agent" of the Property; and (3) Meyer, Suozzi, English

3

& Klein, P.C., ("Meyer Suozzi") as counsel to the Receiver. (Docket Entry 54.) After receiving no objections from JDM, U.S. Bank, or any of the other parties, the Court granted the Receiver's motion and appointed CBRE as managing agent and leasing agent and Meyer Suozzi as counsel (the "CBRE Appointment Order"). (Docket Entry 59.)

On March 29, 2013, U.S. Bank assigned its interest in the Property to Ellis Equities, LLC ("Ellis"). (See Lang Decl., Docket Entry 129, ¶ 5.) On October 3, 2013, JDM and Ellis filed a stipulation and proposed order discharging the Receiver (Docket Entry 121-1), which the Court subsequently so ordered on October 4, 2013 (Docket Entry 122).

In December 2013, the Receiver moved for an order approving his accounting, fixing his commission, and granting attorneys' fees. (Docket Entries 124, 135.) On September 30, 2014, the Court denied the Receiver's request for a commission without prejudice because the Receiver failed to provide the Court with monthly reports of receipts and expenditures incurred during the course of the receivership. (Docket Entry 153.) The Receiver subsequently filed the monthly reports on October 8, 2014. (Docket Entry 155.)

On November 21, 2014, the Court issued a detailed Memorandum and Order, which made a few preliminary rulings regarding the Receiver's request for a commission, but the Court

4

ultimately reserved judgment as to the amount of the Receiver's commission pending a factual hearing (the "November 2014 Order"). See JDM Long Island, LLC v. U.S. Bank Nat'l Ass'n, No. 10-CV-5564, 2014 WL 6632644, at *4-9 (E.D.N.Y. Nov. 21, 2014). The Court specifically noted that two issues needed to be resolved at a factual hearing before the Court could determine whether the Receiver was entitled to a commission. First, the Court could not set the Receiver's commission because he failed to supply adequate records for the Court to determine whether certain fees paid to CBRE during the receivership were (a) justified and (b) not duplicative of work the Receiver was to perform pursuant to his Appointment Order. Id. at *7-9. Second, the Court found that the parties' submissions presented a factual issue regarding whether the Receiver violated his Appointment Order when he hired a contractor to perform tenant improvements in connection with a lease extension he entered into with an existing tenant. Id. at *9.

The Court subsequently held a factual hearing starting on February 19, 2015. (See Hr'g Tr., Docket Entry 171.) The parties have submitted post-hearing briefs, which are currently pending before the Court. (Docket Entries 170, 172, 173.) As explained fully below, after carefully reviewing the transcript of the factual hearing and considering the arguments advanced in the post-hearing briefs, the Court finds that it must disqualify

the Receiver from receiving a commission in this case and that the Receiver may not charge the Property with additional attorneys' fees incurred in connection with the factual hearing or his attempt to obtain a commission.

DISCUSSION

As explained in the November 2014 Order, Section 8004 of the New York Civil Practice Law and Rules governs the compensation that a court-appointed receiver may receive for services rendered during a receivership. It is comprised of two subsections, which state:

> **(a) Generally.** A receiver, except where otherwise prescribed by statute, is entitled to such commissions, not exceeding five per cent upon the sums received and disbursed by him, as the court by which he is appointed allows . . . .
>
> **(b) Allowance where funds depleted.** If, at the termination of a receivership, there are no funds in the hands of the receiver, the court, upon application of the receiver, may fix the compensation of the receiver and the fees of his attorney, in accordance with the respective services rendered, and may direct the party who moved for the appointment of the receiver to pay such sums, in addition to the necessary expenditures incurred by the receiver. . . .

N.Y. C.P.L.R. § 8004. Thus, under Subsection 8004(a), the receiver's commission is an amount less than or equal to, but not exceeding, five percent of the funds "received and disbursed

6

by him," N.Y. C.P.L.R. § 8004(a), and the commission percentage is set in the discretion of the appointing court, see Amusement Distribs., Inc. v. Oz Forum, Inc., 113 A.D.2d 855, 855, 493 N.Y.S.2d 791, 792-93 (2d Dep't 1985) ("Where receipts have been collected by the receiver, CPLR 8004(a) . . . establishes the maximum amount that a court, in the exercise of its discretion, can award as compensation to a receiver . . . .") (citations omitted).

As a general rule, "commissions are only to be paid out of the funds in the receiver's hands at the termination of the receivership." Amusement Distribs., 113 A.D.2d at 855, 493 N.Y.S.2d at 793. However, Subsection 8004(b) is a codification of the exception to the general rule. It permits the appointing court to order the party who sought the receiver's appointment to pay the receiver a commission "in addition to [his] necessary expenditures," even if, as in this case, there are no funds in the receiver's hands at the end of the receivership. N.Y. C.P.L.R. § 8004(b). Before a court may order a commission under Subsection 8004(b), however, the receiver must demonstrate "special circumstances" that justify a commission exceeding the funds collected. 515 E. 12th St. Assocs. v. Gentile, 160 A.D.2d 187, 188, 553 N.Y.S.2d 157, 158-59 (2d Dep't 1990) ("[S]pecial circumstances should be demonstrated before the burden of compensating the receiver in an amount above that collected by

7

the receiver in rents and other proceeds from the property, should be imposed.") (citations omitted).

Similarly, "[a] receiver is not entitled to reimbursement for an agent's commissions in the absence of a court order authorizing the agent's employment" unless he demonstrates "special circumstances" for incurring the agent's unauthorized fees. Aloi v. Lizeric Realty Corp., 260 A.D.2d 192, 193, 688 N.Y.S.2d 512, 513-14 (1st Dep't 1999) ("[T]he failure of the receiver to obtain judicial approval to compensate the managing agent in excess of the fee limit set forth in the order does not bar the exercise of discretionary authority based upon the existence of special circumstances."). And even if the appointing court authorizes the agent's fees, it still may not award the receiver a full commission in addition to the agent's fees unless the agent's fees "are justified and the services performed by the receiver and the agent were not duplicative." Resolution Trust Corp. v. Volpe, 912 F. Supp. 65, 67 (W.D.N.Y. 1996). The receiver ultimately must justify his account, Indep. Props. Co. v. Mast Prop. Investors, Inc., 148 A.D.2d 849, 850, 539 N.Y.S.2d 122, 122 (3d Dep't 1989), and the agent's fees must be necessary and "adequately documented," Resolution Trust, 912 F. Supp. at 68. If the receiver's and the agent's "services were duplicative, they are compensable only

once, and if they were unnecessary, they are not compensable at all." Resolution Trust, 912 F. Supp. at 68.

As noted, at the Receiver's request, the Court appointed his then-employer, CBRE, as the managing agent and leasing agent of the Property. The CBRE Appointment Order provides that CBRE was to act "as the managing agent for the [Property] at a <u>fixed fee of $5,000 per month</u> plus a $10,000 transition fee" and "as leasing agent . . . pursuant to a separate written proposal dated July 28, 2011." (Docket Entry 59 (emphasis added).) In support of his pre-hearing commission application, the Receiver submitted a sworn declaration attesting that he directed three types of compensation to CBRE during the receivership, which totaled $504,860.48. (Sherry Decl., Docket Entry 124, ¶ 18.) Included in this amount was $168,332.50 in "managing agent fees," which, according to the Receiver, were paid to CBRE pursuant to the CBRE Appointment Order "for rent collection, invoice review and payments, insurance and tax payment matters, communications with tenants, day-to-day operations and maintenance and all the work necessary to keep open the doors of a multi-tenant commercial property in serious trouble when the foreclosure action was commenced." (Sherry Reply Decl., Docket Entry 133, ¶ 10.)

However, during the hearing, the Receiver admitted that in addition to the managing agent fees paid to CBRE, he

9

also employed a CBRE employee as an "on-site manager" and a third-party "on-site property administrator" and paid them bi-weekly salaries to perform duplicate services that CBRE was supposed to provide in exchange for the $5,000 fixed fee set by the Court in the CBRE Appointment Order. Specifically, the Receiver testified that these employees "[m]anaged day-to-day cleaning . . . . [d]ealt with any tenant issues around the property. . . . [and] made sure in terms of collection of rent and then payment of invoices." (Hr'g Tr. 107:3-10; see also Hr'g Tr. 94:10-17 (explaining that the "on-site property administrator" "handle[d] all the administrative work as relates to processing of invoices, rent, bills and rent collection in terms of follow-up").) The Receiver never sought Court approval for these additional salaries (Hr'g Tr. 90:13-17), and even worse, admitted at the hearing that he failed to disclose these salaries in the accounting he filed with the Court when he applied for his commission, (Hr'g Tr. 104:14-23). The total amount paid for these services was $455,039.01, which Ellis was able to calculate by reviewing the Receiver's monthly reports, which the Receiver also failed to file when he applied for his commission. (See Hr'g Tr. 100:15-16.)

It is well settled that a receiver's "duty is to preserve and operate the property, within the confines of the order of appointment and any subsequent authorization granted to

10

him by the court." Kaplan v. 2108-2116 Walton Ave. Realty Co., 74 A.D.2d 786, 786, 425 N.Y.S.2d 817, 818 (1st Dep't 1980) (citation omitted). Here, the Receiver did not obtain approval to hire the on-site manager or property administrator, and in fact, violated the CBRE Appointment Order by hiring them and paying them salaries over and above the $5,000 flat fee the Court authorized for the same services. Under these circumstances, the Court, in its discretion, cannot approve the Receiver's commission and the unauthorized expenditures to the on-site manager and property administrator, which exceed the maximum amount the Court could award the Receiver under CPLR 8004.

Additionally, the factual hearing further revealed that the Receiver entered into a construction contract with Ambrosino Consultant Corporation ("Ambrosino") to perform tenant improvements at the Property in violation of his Appointment Order. As noted in the November 2014 Order, the Receiver and Winthrop University Hospital ("Winthrop"), an existing tenant at the Property, agreed to extend the terms of its lease in August 2012 and executed a "Second Amendment to Lease" on February 22, 2013, which provided, among other things, that the Receiver, as landlord of the Property, would provide $254,190 for certain improvements to the leased space pursuant to a "Landlord Work Letter" accompanying the Lease Amendment. JDM Long Island, LLC,

2014 WL 6632644, at *9. The Receiver subsequently retained Ambrosino as the general contractor for this work pursuant to a service contract dated July 11, 2013--after Ellis acquired its interest in the Property from U.S. Bank. Id.

The Court subsequently discharged the Receiver and Ellis refused to pay Ambrosino for the work performed under the service contract. Id. Relying on the Receiver's Appointment Order, Ellis claimed that the Lease Amendment was unauthorized because it caused the Receiver to incur expenses beyond the funds in his hands and he did not first obtain approval from the Court or written consent from U.S. Bank to do so. Id. In particular, the Receiver's Appointment Order specifically "prohibited [him] from incurring obligations in excess of the monies in his hands without further order of the court or written consent of the Lender." Id. (internal quotation marks and citation omitted). Following the factual hearing, the Court agrees with Ellis.

At the factual hearing, the Receiver testified that there would have been sufficient rental income going forward to pay Ambrosino and that U.S. Bank's agent, CW Capital, consented to such arrangement. (See Hr'g Tr. 138-139:18; see also Receiver's Br., Docket Entry 170, at 8 ("Mr. Sherry specifically testified that his agreement with CW Capital as to tenant improvements was that rental income should be used to pay for

such improvements . . . .") However, there is no dispute that at the time the Receiver signed the contract with Ambrosino, he did not have enough money in hand to pay such contract at the time he entered into it (Hr'g Tr. 79-80, 146-47), and he did not obtain approval from the Court or "written consent" from U.S. Bank for such contract (Hr'g Tr. 81), as the Appointment Order required.

Moreover, the Receiver failed to carry his burden of showing that he should receive the commission he seeks. While the Receiver was able to explain what CBRE did in particularized detail, he struggled to articulate his role as the Receiver. For example, on direct examination, the Receiver defined CBRE's scope of work as the managing agent as follows:

> To understand all the leases, abstract the leases, create a rent roll, do the accounting, monthly accounting, set up a process for payment of vendor invoices. The next was collection of rents, maintenance, daily maintenance of the property and all service contracts throughout the property. Tenant, taking care of tenant issues there.

(Hr'g Tr. 23:19-25.) Similarly, he testified that CBRE's scope of work as leasing agent was:

> [T]o market the building, put their sign out there that there is a new leasing agent, start providing an assessment of the tenants that were in place, their lease expiration, what they were planning on doing, whether renewal or planning on leaving. Tenants in the market who's out there for the amount of vacancy they have, bringing them in, and

13

>       working with myself and the management team
>       as well as CW Capital about what is going
>       on, the effort to get that place leased up.

(Hr'g Tr. 24:4-13.) However, when asked to explain what work was personal to him as the Receiver, he could only state that he "coordinate[d]" CBRE's efforts:

>       My scope was to get--coordinate the efforts
>       of [the managing agent, leasing agent, and
>       the project manager] . . . in terms of
>       stabilizing the building, make it habitable
>       to work. . . . And provide the reports to
>       the special servicer on a monthly basis,
>       financial reports. Give them updates on
>       what was--what were the capital items of
>       repairs that needed to be done.

(Hr'g Tr. 24:20-25:6.) He even admitted that CBRE, not he, prepared the monthly reports of the receivership's activity. (Hr'g Tr. 96:19-22.) While a duplication of services between the Receiver and CBRE normally might only warrant a reduction of the Receiver's commission, here, the Court finds that given that the Property operated at a substantial loss and the Receiver violated both his Appointment Order and the CBRE Appointment Order, a commission is not appropriate. Accordingly, the Receiver's request for a commission is DENIED.

Finally, the Court declines to charge Ellis with the attorneys' fees the Receiver incurred in connection with the factual hearing or his attempt to justify his account. As noted in the November 2014 Order, although "attorneys' fees may be awarded to a receiver in connection with the receiver's final

accounting if the legal representation is necessary and/or would facilitate the final accounting process," JDM Long Island, 2014 WL 6632644, at *10 (citation omitted), it was the Receiver's failure to adequately present and justify his account that required the factual hearing, and he ultimately failed to justify his account. Under these circumstances, it would be inequitable to pass the Receiver's legal fees onto Ellis. Accordingly, the Receiver's request for attorneys' fees is also DENIED.

## CONCLUSION

For the foregoing reasons, the Receiver's motions for a commission and attorneys' fees (Docket Entries 124, 135) are DENIED in their entirety.

SO ORDERED.

/s/ JOANNA SEYBERT
Joanna Seybert, U.S.D.J.

Dated: November  2 , 2015
       Central Islip, New York